653 So.2d 1152 (1995)
Teresa C. GUILLORY
v.
INTERSTATE GAS STATION.
No. 94-C-1767.
Supreme Court of Louisiana.
March 30, 1995.
*1153 Russell L. Sylvester, Natchitoches, for applicant.
Philip A. LeTard, Vidalia, for respondent.
MARCUS, Justice[*].
Teresa C. Guillory was employed by Interstate Gas Station (Interstate) at the Phillips 66 Gas Station in Vidalia, Louisiana. At around midnight on Saturday July 25, 1992, she was engaged in her employment duties at her regular work station stacking cigarettes beside a well-lit window inside the service station. Ms. Guillory was shot three times by her husband, Clinton H. Guillory, III, with a Remington. 243 caliber rifle equipped with a scope through the glass window of the gas station from across the highway on which the station is located. The bullets struck her in the neck, shoulder and chest. Ms. Guillory was hospitalized for a month following the incident and suffered extensive injuries.
Ms. Guillory had been experiencing marital problems for some time prior to the incident. In March of 1991 Ms. Guillory filed a Petition for a Protective Order and in May of 1991 she filed a Petition for Divorce against Mr. Guillory. She filed another Petition for Divorce on June 5, 1992. She began her employment with Interstate on July 3, 1992. About a week prior to the incident, she filed another Petition for Protective Order against Mr. Guillory in which she stated:
On May 19, 1992, Clinton left my house due to alcohol related disturbance. On June 5, 1992 divorce was filed for. Since that time he has cut two tires on my car. He has called my home, work and family harassing by threats and hanging up. He has followed me, rode non-stop by my job, rode by my house and threaten [sic] my life to my daughter, my mother, my employer, and to me. He continues to follow me and to call my job. He has told everyone that he will kill me if he can't have me and has let my family know that I had until my divorce is final to live.
Ms. Guillory asked her manager at Interstate if she could carry a weapon in her vehicle or keep a weapon in the store or whether she could work a daytime shift and her requests were refused. She was working her regular shift when the incident occurred.
Ms. Guillory filed a claim against Interstate seeking worker's compensation benefits and medical expenses. Interstate and its worker's compensation insurer, Insurance Company of North America, answered the claim and filed a motion for summary judgment seeking dismissal of plaintiff's claim against them based upon La.R.S. 23:1031(D) of the worker's compensation statutes which provides:
An injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment.
After a hearing, the hearing officer granted defendants' motion for summary judgment and dismissed Ms. Guillory's claim finding that "claimant's injury arose out of a dispute with her husband which was totally unrelated to her employment." The court of appeal reversed concluding that a material issue of fact existed as to whether the injury arose out of a dispute with Ms. Guillory's estranged husband over matters which were unrelated or related to her employment.[1] On defendants' *1154 application, we granted certiorari to review the correctness of that decision.[2]
The narrow issue for us to decide is whether the employer is entitled to summary judgment under La.R.S. 23:1031(D), having shown that the injury to Ms. Guillory arose from a "dispute" over matters "unrelated to employment."
La.R.S. 23:1031 provides for worker's compensation benefits to an employee who receives personal injury by accident arising out of and in the course of his employment. The terms "arising out of "and "in the course of" constitute a dual requirement. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated. Raybol v. Louisiana State University, 520 So.2d 724, 726 (La.1988). Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5, 7 (La.1973).
Whether Ms. Guillory was in the course of her employment, the first prong of the dual inquiry, is the easier one for us to answer. Ms. Guillory was stacking cigarettes at her work station when the incident occurred. Clearly, she was in the course of her employment.
The more difficult question for us to answer and the issue which we must determine is whether the incident arises out of the employment relationship.
An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Myers v. Louisiana Railway and Navigation Co., 140 La. 937, 74 So. 256, 259 (1917). Moreover, an accident has also been held to arise out of employment if the employee was engaged about his employer's business and not merely pursuing his own business or pleasure and when the conditions or obligations of the employment cause the employee in the course of employment to be at the place of the accident at the time the accident occurred. Kern v. Southport Mill, 174 La. 432, 141 So.19, 21 (1932). The principal objective of the "arising out of employment" requirement is to separate accidents attributable to employment risks, which form the basis of the employer's obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible. Mundy v. Dept. of Health & Human Resources, 593 So.2d 346, 349 (La.1992); See 1 Arthur Larson, Workmen's Compensation, § 7.00 (1994).
In Raybol, a custodial employee of the university was assaulted by a former boyfriend while performing her duties in an isolated area of a closed and locked dormitory. The factual situation possessed a strong showing of "course of employment" in that plaintiff was on the work premises during work hours, fully engaged in her employment tasks. It presented a weak "arising out of employment" showing since the cause of her injury was an argument with a former boyfriend, a personal affair. However, the majority concluded that an accident that happens while an employee is actively engaged in the performance of her duties during working hours will be regarded as having occurred in the course of her employment and in such circumstances the "injury or death caused by the assault of a third person arises out of employment regardless of the nature of difficulty that prompted the attack or the identity of the assailant." Raybol, 520 So.2d at 727. In other words, the fact that the incident from which the injury arose was of a personal nature was not important since the employee was "squarely in the course of employment when the attack occurred and she had not invited the attack through any willful intention to injure another." Id.
Section "D" was added to La.R.S. 23:1031 by the 1989 Louisiana Legislature following *1155 our decision in Raybol.[3] This section was added to relieve the employer of paying compensation for injuries arising out of disputes unrelated to employment. This new provision places the burden of proof on the employer to demonstrate a non-employment dispute leading to injury. H. Alston Johnson, Developments in the LawA Faculty Symposium: Workers' Compensation, 50 La. L.Rev. 391, 395 (1989).
The case before us presents this court with the first opportunity to apply La.R.S. 23:1031(D). Defendants filed a motion for summary judgment presenting the following evidence in support of its motion:
1. The guilty plea of Clinton H. Guillory, III, to the crime of attempted second degree murder;
2. A petition for divorce filed by Ms. Guillory on May 31, 1991;
3. A petition for divorce filed by Ms. Guillory on June 5, 1992;
4. A petition for a protective order filed by Ms. Guillory on July 21, 1992, four days prior to the shooting incident (the allegations of which are set forth earlier in this opinion);
5. An excerpt from Ms. Guillory's deposition testimony wherein she stated that the only motive for the shooting arose out of her marital relationship with her husband.
In opposition to the motion for summary judgment, Ms. Guillory contends that the incident was not a dispute but an "attack" upon her by her estranged husband and also that the incident was not strictly personal but related to her employment in that her employer failed to protect her in the work place or allow her to protect herself.
Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Under La. Code Civ.P. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and mover is entitled to judgment as a matter of law. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). The mover (defendants) have the burden of establishing that no material factual issue exists. Schroeder, 591 So.2d at 345.
Based upon the documents presented by the parties, we find that Ms. Guillory and her estranged husband were entrenched in an ongoing marital dispute relating to Ms. Guillory's desire to leave him and end the marriage. In less than two years of marriage, Ms. Guillory had filed two petitions for divorce and two protective orders against Mr. Guillory based upon his constant threats and harassment. The second protective order was filed less than a week prior to the incident. The court of appeal concluded that "her husband obviously did not want her to leave him and she obviously did not want to remain with him, hence, a dispute." We agree and conclude that the attack upon Ms. Guillory was the result of an ongoing dispute between the couple. However, the court of appeal then went on to find that a material issue of fact existed concerning whether the dispute was related or unrelated to Ms. Guillory's employment. Plaintiff's allegations of her employer's refusal to allow her to carry a gun on the premises or to provide her with another work shift or to have a security guard on the premises are totally unrelated to the fact that plaintiff's injury arose out of a dispute with her husband. The dispute was in no way connected to her employment except for the fact that the injury resulting from the dispute occurred at her place of employment. Clearly, under the undisputed facts, defendants have shown that the injury arose from a non-employment related dispute between plaintiff and her husband. Having found that the dispute was unrelated to the plaintiff's employment, the injury involved should not be considered as "having arisen out of the employment" and is therefore not covered by the worker's compensation statutes. Since there are no genuine issues as to material facts and defendants are *1156 entitled to judgment as a matter of law, the hearing officer was correct in granting a summary judgment in favor of defendants and against plaintiff dismissing her suit at her costs. The court of appeal erred in holding otherwise. We must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the hearing officer granting defendants' motion for summary judgment is reinstated. All costs are assessed against plaintiff.
JOHNSON, J., dissents with reasons.
JOHNSON, Justice, dissenting.
I respectfully dissent:
The Louisiana workers' compensation act provides for compensation to an employee when (s)he "receives personal injury by accident arising out of and in the course of employment...." La.R.S. 23:1031. The statutory scheme contemplates dual requirements through the phrases "arising out of "and "in the course of." Raybol v. Louisiana State University, 520 So.2d 724, 726 (La. 1988). The latter phrase refers to the time and place relationship between the risk and the employment. Id. That is, an accident occurs during the course of employment when it occurs during the time of the employment and at a place contemplated by the employment. Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (La.1973). The phrase "arising out of "suggests an inquiry into the character or origin of the risk. Raybol, 520 So.2d at 726.
Whether an accident or injury arises out of employment has been the source of much litigation resulting in the emergence of two tests generally referred to as the "Myers rule" and the "Kern rule." Myers v. La. Ry. & Nav.Co., 140 La. 937, 74 So.256 (1917); Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19 (1932).
This court stated in Myers that
[t]he test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in employment.
On the other hand, in Kern, this court stated
when one finds himself at the scene of the accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident `arise out of' the necessity which brought him there, and hence `arise out of' his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?
The Myers rule focuses on the increased risk to the employee and the Kern rule focuses on time, place, and circumstance. Both rules have been applied in cases where employees have been the victim of assaults. However, a review of the jurisprudence indicates that application of the Kern rule has gained acceptance as the primary test in instances where the employee was clearly in the course of employment at the time of the assault.
In Raybol, in discussing the arising out of requirement, this court stated that "[w]hen the employee is clearly within the course of employment because he is actively engaged in the performance of his duties, preparing himself for his work, or taking a short permissible rest from his labors, his injury or death caused by the assault of a third person arises out of employment regardless of the nature of the difficulty that prompted the attack or the identity of the assailant." Id. Since the employee was so squarely in the *1157 course of employment when the attack occurred and she had not invited the attack through any willful intention to injure another, this court found that her injury arose out of her employment.
This court's discussion in Raybol of the `arising out of' requirement has been criticized as reducing the dual requirement into a single requirement. W. Malone & H. Johnson, 13 Louisiana Civil Law TreatiseWorkers' Compensation § 195 (1994). However, any confusion created by the language in Raybol was alleviated by this court's later pronouncement in Mundy v. D.H.H.R., 593 So.2d 346 (La.1992). Additionally, Mundy provided some clarification for the perceived conflict between the Myers rule and Kern rule.
In Mundy, a nurse was stabbed by an assailant in the hospital elevator while she was en route to her work station on the eleventh floor. In examining the `arising out of' requirement, this court discussed both the Myers rule and Kern rule. This court stated that "[a]n accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment." Id. at 349 (citing Myers). Additionally, this court stated that "an accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred." Id. (citing Kern). Nonetheless, this court reasoned that "when the employee is squarely within the course of his employment, virtually any risk (whether an increased risk or not) has been considered as arising out of employment." Id. at 349. This court found that the `course of employment' showing was weak because the employee was not at her work area when attacked and had not begun her employment duties. Therefore, a strong `arising out of' showing was required to establish the relationship between the injury and the employment necessary for entitlement to compensation. The `arising out of' showing was considered weak because the risk of assault at the hands of an unknown assailant was not related to the employment.
Thus, after Mundy, it is clear that both the Myers rule and Kern rule may be utilized in determining whether an accident `arises out of' the employment. Moreover, Mundy shed light on this court's resolution of when the different rules are applied. That is, the Kern rule is applicable where the accident clearly occurs in the course of the employment and the Myers rule is applicable in cases where it is somewhat doubtful that the employee was acting in the course of employment at the time of the accident.
Applying these precepts to the present case, Ms. Guillory was well within the course of her employment when she was shot and, under the Kern rule, recovery should be allowed without reference to the nature of the difficulty that prompted the attack or the identity of the assailant. See Raybol, 520 So.2d at 727. Ms. Guillory meets the test of the Kern case because (1) she was actively engaged in her employer's business at the time of the shooting and was not pursuing her own business or pleasure, and (2) the necessities of her employer's business required that she be at the place of the accident at the time the accident occurred. Accordingly, Ms. Guillory's accident arises out of her employment.
Relying on La.R.S. 23:1031(D), defendants argue that Ms. Guillory's claim is excluded from coverage under the workers' compensation act because Ms. Guillory's injuries resulted from a "dispute" with her estranged husband over matters unrelated to her employment. La.R.S. 23:1031(D) provides
An injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment.
Defendants contend that the statute was aimed at decisions such as Raybol where compensation was allowed under circumstances similar to the present case. In response, Ms. Guillory contends that the present incident involved an "attack," not a "dispute" and, therefore, the exclusion from coverage contained in La.R.S. 23:1031(D) and *1158 relied on by defendants is inapplicable to her claim.
The workers' compensation act is a compromise intended to protect workers injured while on the job. Under the act, the employer gives up the immunity against liability he would otherwise enjoy in cases where he is not at fault and, in return, the employee surrenders his right to full damages and accepts a modest claim for bare essentials represented by compensation. Gagnard v. Baldridge, 612 So.2d 732, 735 (La.1993). In order to effectuate the beneficent purpose of the act, this court has consistently "liberally construed the coverage provisions of the workers' compensation act while narrowly construing the immunity provisions." Stelly v. Overhead Door Co., 646 So.2d 905 (La. 1994). That is, "the law is to be liberally construed in favor of the injured employee." Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52, 55 (La.1993).
Construing "dispute" as that word is used in La.R.S. 23:1031(D) to include one-sided violent attacks by third parties against employees when such an interpretation is not definitively indicated by the language of the statute would not be in accord with a liberal interpretation in favor of the injured employee. Rather, the word "dispute" generally connotes a debate, quarrel, or fight[*] which, logically, requires active participation by both the employee and the third party. It is through active participation in the "dispute" that the employee increases his risk of assault at work and, under such limited circumstances, the employer should be entitled to immunity under the statute. However, a "dispute" does not include unilateral attacks by an aggressor against a passive victim. Moreover, a "dispute," as that word is used in the statute, does not include the mere existence of a legal controversy, like a divorce, between the employee and the third party.
I respectfully disagree with the defendants' contention and the majority's conclusion that the statute affects the application of the principles enunciated in Raybol to the present case.
It appears that the shooting was an unprovoked and unwarranted attack. Ms. Guillory was not actively involved in a "dispute" with Mr. Guillory. Rather, Ms. Guillory was the passive victim of Mr. Guillory's aggression. Ms. Guillory was innocent of having caused or initiated the assault. Although Ms. Guillory filed for a divorce and protective orders, her actions do not rise to the level of inviting an assault or actively engaging in a dispute. Therefore, under the facts which may be reasonably inferred in favor of Ms. Guillory for purposes of considering defendants' motion for summary judgment, Ms. Guillory's injuries did not arise out of a "dispute."
The judgment of the court of appeal should be affirmed insofar as it reversed the judgment of the hearing officer granting defendants' motion for summary judgment and the case should be remanded to the district court for further proceedings.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr. Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] 93-1088 (La.App. 3 Cir. 6/1/94); 640 So.2d 635.
[2] 94-1767 (La. 10/7/94); 644 So.2d 626.
[3] 1989 La. Acts No. 454, § 2, effective Jan. 1, 1990.
[*] Webster's dictionary defines dispute as follows:

to engage in argument: debate: to argue irritably or with irritating persistence ... to make the subject of disputation ... to call into question... to struggle against .. to struggle over: contest
Webster's Ninth New Collegiate Dictionary (1991).