916 So.2d 231 (2005)
Ellis MUSE and Hazel M. Muse
v.
LANE MEMORIAL HOSPITAL FOUNDATION.
No. 2004 CA 0694.
Court of Appeal of Louisiana, First Circuit.
May 13, 2005.
*232 Charles R. Moore, Baton Rouge, Counsel for Plaintiffs/Appellants Ellis & Hazel Muse.
Robert W. Robison, Jr., Baton Rouge, Counsel for Defendant/Appellee Lane Memorial Hospital Foundation.
Before: PARRO, KUHN, and WELCH, JJ.
KUHN, J.
Plaintiffs-appellants, Ellis Muse and his wife Hazel,[1] appeal the trial court's dismissal of their claims against defendant-appellee, Lane Memorial Hospital Foundation (Lane Memorial Hospital) by summary judgment. We affirm.

ISSUE
In our review of the trial court's grant of summary judgment, we examine whether a contract between a doctor and a hospital which contains a valid stipulation for the benefit of a third party (also known under Louisiana law as a stipulation pour autrui),[2] who was a patient, falls within the scope of the Louisiana Medical Malpractice Act (MMA), La. R.S. 40:1299.41-1299.49.

FACTUAL AND PROCEDURAL BACKGROUND
In December 1999, Mr. Muse, a self-paying patient without medical health insurance, presented to Lane Memorial Hospital's emergency room suffering from chest pain. After a heart attack was ruled out, he was diagnosed with methacholine resistant staph aureus (MRSA), admitted to the hospital, and placed on antibiotics, which were administered intravenously. Subsequently, Mr. Muse was transferred to the hospital's skilled nursing facility (SNF) of Lane Memorial Hospital, where the antibiotic treatment for the MSRA infection was continued. While in the SNF, he was seen by an infectious disease expert who suggested that Mr. Muse transfer to Earl K. Long Memorial Hospital, where a full time infectious disease expert was on staff. The Muse family declined to move Mr. Muse.
*233 In January 2000, Dr. Richard Rathbone became Mr. Muse's primary treating physician. Based on the opinion of an infectious disease expert, Dr. Rathbone suspected that the patient was suffering from osteomyelitis in his toe. To verify this suspicion and to rule out any other possible sources, Dr. Rathbone ordered a bone scan of Mr. Muse's entire body.
Concern for the greater risk of exposure to infectious diseases while hospitalized and because Mr. Muse seemingly otherwise met the criteria for discharge, Dr. Rathbone decided to release the patient with an order that home health care administer the intravenous antibiotic treatments in amounts suitable to treat the suspected osteomyelitis. Dr. Rathbone believed he could subsequently review the results of the bone scan and order any additional necessary action through home health care. As a condition of discharge, Lane Memorial Hospital agreed with Dr. Rathbone that Mr. Muse could obtain a bone scan at the hospital prior to discharge with the hospital waiving its usual policy that required patients to pay a portion of the charges upon receipt of services. Dr. Rathbone did not want the fact that Mr. Muse was self-paying and/or unable to meet the necessary prepayment deposit to impede his immediate receipt of the diagnostic testing.
On January 18, 2000, prior to discharge, when Mr. Muse went for the ordered bone scan, the Lane Memorial Hospital bone scan machine was not available.[3] As a result, Dr. Rathbone's order was changed from a bone scan before discharge to one that would be administered on an outpatient basis. A bone scan was subsequently scheduled to be performed 24 days later at Earl K. Long Memorial Hospital. But before he received the bone scan, Mr. Muse's spine had collapsed. An MRI performed on January 27, 2000, at Our Lady of the Lake Regional Medical Center indicated that osteomyelitis was present in Mr. Muse's spine rather than in his toe. Due to the severity of the osteomyelitis, Mr. Muse was rendered a paraplegic.
On November 21, 2001, the Muses filed this lawsuit, naming Lane Memorial Hospital, the Louisiana Patient's Compensation Fund and Oversight Board (the Fund), and others, as defendants.[4] On January 31, 2002, the medical review panel that reviewed the Muses' claim against Lane Memorial Hospital concluded that this defendant failed to meet the applicable standard of care.
Settlement in the amount of $100,000 was reached by the Muses and Lane Memorial Hospital. The order approving the joint settlement expressly reserved to plaintiffs their rights to proceed against Lane Memorial Hospital "as to all causes of action not covered by and/or outside of the [MMA]." And a court-approved settlement in the amount of $400,000 was subsequently reached with the Fund.
*234 Afterwards, Lane Memorial Hospital filed a motion for summary judgment, seeking dismissal from the Muses' lawsuit on the ground that claims for malpractice had been settled. A motion for partial summary judgment was filed by plaintiffs, seeking a judgment which determined that pursuant to the Muses' third party beneficiary rights, Lane Memorial Hospital was liable to them for damages on claims not covered under the MMA.[5] After a hearing on these motions, the trial court granted Lane Memorial Hospital's motion for summary judgment, denied the relief requested in the plaintiffs' motion for partial summary judgment, and dismissed the Muses' claims against the hospital. This appeal by the Muses followed.

DISCUSSION
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. The summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Because the applicable substantive law determines the materiality of facts in a summary judgment setting, a discussion of the applicable law is appropriate. See J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 11 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 203, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
For purposes of this summary judgment, we will assume the existence of a valid contract between Dr. Rathbone and the hospital for which Mr. Muse was a third party beneficiary. Thus, the issue to be resolved before us is whether Mr. Muse, as the third party beneficiary, may assert a breach of contact claim outside the MMA.
As of January 2000, Louisiana Revised Statute 40:1299.41, which sets forth the definitions and general applications, stated in pertinent part:
A. As used in this Part . . .
(1) "Health care provider" means a. . . hospital . . . .
(3) "Patient" means a natural person. . . who receives or should have received health care from a licensed health care provider, under contract, express or implied.
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely . . . .
(9) "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement. . . .
C. No liability shall be imposed upon any health care provider on the basis of *235 an alleged breach of contract, whether by express or implied warranty, assuring results to be obtained from any procedure undertaken in the course of health care, unless such contract is expressly set forth in writing and signed by such health care provider or by an authorized agent of such health care provider. (Emphasis added.)
In this appeal, it is undisputed that Lane Memorial Hospital was a qualified health care provider as defined by La. R.S. 40:1299.42 A, and that Mr. Muse was a patient as defined by La. R.S. 40:1299.41 A(3). The Muses seek damages from Lane Memorial Hospital arising out of a contract between it and Dr. Rathbone, which included a stipulation for the benefit of Mr. Muse that the hospital would allow Mr. Muse to have a bone scan performed at the hospital without the imposition of a prepayment deposit upon rendition of the services. The Muses note that the only reference in the MMA to a contract other than that provided in the definition of malpractice is the one contained in La. R.S. 40:1299.41 C, which pertains to contracts between health care providers and patients. Relying on Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415, the Muses urge that the MMA envisions, within its definition of malpractice, only a breach of a contract between a health care provider and its patient.
In Hutchinson, a psychiatrist's patient shot and permanently paralyzed the plaintiff from the waist down prior to turning the gun on himself and committing suicide. 93-2156 at p. 2, 637 So.2d at 418. At issue was whether the MMA governed the non-patient plaintiff's claim against the psychiatrist and a hospital for their alleged failure to warn or take reasonable precautions to protect the plaintiff against a threat of violence communicated to the psychiatrist by the patient. Hutchinson, 93-2156 at p. 1, 637 So.2d at 417. The Hutchinson court concluded the MMA applied exclusively to claims arising from injuries to or death of a patient where such claims were brought by the patients themselves, their representatives on the patient's behalf, or other persons with claims arising from injuries to or death of a patient. 93-2156 at p. 1, 637 So.2d at 417-18. Finding that the non-patient plaintiff's claims did not arise from an injury to or the death of a patient, the court held the MMA did not govern the plaintiff's claim. Hutchinson, 93-2156 at p. 1, 637 So.2d at 418. In reaching its conclusion, the court stated:
We find apparent in the Act's definitions of "patient," "tort," "health care," and "malpractice" the legislature's recognition of the traditional rule of law allowing recovery for medical malpractice only where a physician-patient relationship exists as the result of an express or implied contract and where the physician breaches . . . the contract . . . to the patient. (Emphasis added; citations omitted.)
Hutchinson, 93-2156 at pp. 6-7, 637 So.2d at 421.
The Muses reason that the MMA does not apply to their instant claim because it is one for damages resulting from the breach of a stipulation pour autrui which was provided for in a contract between the two health care providers. Thus, the Muses assert, since it is not an obligation arising directly from the contract between the health care provider and the patient, it is not encompassed in the MMA. We disagree.
Unlike the plaintiff in Hutchinson, the plaintiffs in this case are the patient himself and his wife (asserting entitlement to a claim derivative of her husband's, for loss of consortium), who seek damages from the patient's health care provider. Unlike the plaintiff's claim in Hutchinson, the *236 Muses' claims clearly arise from the injury to Mr. Muse who, indeed, was a patient of Lane Memorial Hospital. Thus, Hutchinson is inapposite, and the Muses' reliance on it is misplaced.
The Muses next contend that under La. C.C. art. 1982, Lane Memorial Hospital as promisor of the contract, which contained the stipulation pour autrui for Mr. Muse's benefit, cannot raise the MMA as a defense to their claims. The Muses argue that since Lane Memorial Hospital could not raise the MMA as a defense against Dr. Rathbone, the promisee/stipulator, the Muses assert that the hospital cannot raise that defense against their claims. We disagree.
Louisiana Civil Code article 1982 states, "The promisor may raise against the beneficiary such defenses based on the contract as he may have raised against the stipulator." The Muses ask that we find implicit in Article 1982 a limitation that only those defenses that a promisor may raise against the promisee/stipulator may be raised against the third party. We find nothing in the language of this article that mandates such a narrow limitation on the defenses a promisor may raise.
Next, the Muses maintain the definition of malpractice is ambiguous when applied to the contract between Dr. Rathbone and the hospital. We disagree.
Because the MMA is in derogation of general rights of tort victims, any ambiguities in the MMA must be strictly construed against coverage. Williamson v. Hosp. Dist. No. 1 of Jefferson, XXXX-XXXX, p. 8 (La.12/1/04), 888 So.2d 782, 788. Legislation is a solemn expression of legislative will. La. C.C. art. 2. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. It is when the language of the law is susceptible of different meanings that it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. arts. 10 and 12.
Under the plain language of La. R.S. 40:1299.41 A(8), malpractice means "any breach of contract based on health care or professional services." (Emphasis added.) Assuming the existence of third party beneficiary status, the Muses seek damages arising from a breach of the stipulation pour autrui in a contract created for the benefit of Mr. Muse, the patient, from a health care provider, Lane Memorial Hospital.
The established facts in this case do not support a finding that Lane Memorial Hospital denied Mr. Muse a bone scan. It is undisputed that a bone scan was scheduled by Lane Memorial Hospital at Earl K. Long Memorial Hospital 24 days subsequent to his discharge. Thus, from the alleged facts and those established for purposes of summary judgment, the only possible damages sustained by the Muses resulted from a delay in an administration of a bone scan. But even if the alleged imposition of a prepayment deposit caused Mr. Muse to delay receipt of a bone scan, "failure to render services timely" by the health care provider is within the express definition of malpractice set forth in the MMA. Thus, those damages arising from a delay in the receipt of a bone scan by Mr. Muse fall within the ambit of the MMA.[6]
*237 Because administration of a bone scan without the imposition of a prepayment deposit is an "act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider . . . to . . . a patient," and it was to occur "during the patient's medical care, treatment or confinement," it is health care under the MMA. See La. R.S. 40:1299.41 A(9).
Since the Muses seek damages for breach of Lane Memorial Hospital's contract to which Mr. Muse was a third party beneficiary. Applying the plain and unambiguous language of La. R.S. 40:1299.41 A(8), the Muses' demand for damages, based on the failure of the health care provider, Lane Memorial Hospital, to render health care or professional services timely to Mr. Muse, is a malpractice claim encompassed by the MMA.
The Muses also contend that the hospital's "denial of the bone scan was purely administrative," having occurred as a result of the imposition of the prepayment deposit by the health care provider and the patient's inability to pay it. Describing Lane Memorial Hospital's conduct as non-medical, and relying on Coleman v. Deno, XXXX-XXXX, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315, the Muses urge it is not malpractice as defined by the MMA. We disagree.
In Coleman, the supreme court set forth six factors to be utilized in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined by the MMA.[7] But applications of those factors by the courts have been limited to cases where plaintiffs' claims arose in tort to determine whether the alleged tortious conduct was within the ambit of the MMA. We believe these factors are not the appropriate criteria for examining a breach of contract claim. See Holly P. Rockwell, Annotation, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R.4th 887, 898-99 (1991). Thus, we decline to apply them in this case in which the Muses assert that a claim for damages arising from a breach of a stipulation pour autrui.
In breach-of-contract claims, reliance on the definition of malpractice contained in the MMA is appropriate. See 89 A.L.R.4th at 898. Since we have already concluded that the breach of the stipulation pour autrui urged by the Muses in this case falls within the ambit of the plain *238 and unambiguous language of La. R.S. 40:1299.41 A(8), defining malpractice, their breach-of-contract claim is governed by the MMA.[8] Because the Muses settled their claims covered by the MMA against Lane Memorial Hospital for the statutory maximum, see La. R.S. 40:1299.42 B, the trial court correctly granted summary judgment, dismissing their claims against this health care provider.

DECREE
We affirm the trial court's grant of summary judgment in favor of Lane Memorial Hospital, dismissing plaintiffs' claims. Appeal costs are assessed against Ellis and Hazel Muse.
AFFIRMED.
NOTES
[1] Although Mr. Muse died after suit was filed but prior to the trial court ruling in this matter, no party substitution was made to enforce his rights, see La. C.C.P. arts. 801-807, and Lane Memorial Hospital has not filed a motion to compel pursuant to La. C.C.P. art. 802.
[2] See Doucet v. Nat'l Maintenance Corp., XXXX-XXXX, p. 7 (La.App. 1st Cir.6/21/02), 822 So.2d 60, 66.
[3] The bone scan machine was down for routine maintenance. It is unclear whether Dr. Rathbone was advised that the bone scan machine was broken and, therefore, not operational on January 18, 2000.
[4] Hospital District # 1 of East Baton Rouge Parish was added as a defendant by an amendment to the Muses' petition. The record does not contain the answer originally filed on behalf of Lane Memorial Hospital Foundation, but the defendant's answer to the amended petition reiterated the allegations of its earlier answer, and the parties do not raise any complaints directed to the missing pleading. In their petition, the Muses aver that Lane Memorial Hospital Foundation and Lane Home Health Care are the owners and operators of Lane Memorial Hospital and refer to the foundation and Hospital District # 1 of East Baton Rouge Parish collectively as "Lane Memorial Hospital," the health care provider they allege is liable to them.
[5] A dumping claim for violation of Emergency Medical Treatment and Active Labor Act, see 42 U.S.C. § 1395dd, was also joined in the parties' respective summary judgment pleadings. But the trial court dismissed this claim and in this appeal, plaintiffs have not raised any contentions challenging that dismissal.
[6] We note that the medical review panel found the failure of Lane Memorial Hospital nurses to inform Dr. Rathbone that the requested bone scan was scheduled 24 days after discharge, rather than immediately as he had ordered, was among the reasons why the health care provider's conduct fell below the standard of care.
[7] Citing Holly P. Rockwell, Annotation, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R.4th 887, 898 (1991), the Coleman court considered (1) whether the particular wrong is treatment related or caused by a dereliction of professional skill, (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, (3) whether the pertinent act or omission involved assessment of the patient's condition, (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, (5) whether the injury would have occurred if the patient had not sought treatment, and (6) whether the tort alleged was intentional, to determine that a patient, whose left arm had been amputated following transfer from one hospital's emergency room to another, had asserted claims against the treating physician that were "malpractice" as defined by the MMA. Coleman, XXXX-XXXX at pp. 14-18, 813 So.2d at 314-16.
[8] Examination of the type of contract alleged and the nature of the wrong which gave rise to the breach-of-contract claim is also appropriate. And where the claim for breach of a special contract is asserted, application of the MMA depends on whether, as a factual matter, the alleged contract actually promised a specific result. See Rockwell, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R.4th 887, 898-99. It is also appropriate to determine whether, as a factual matter, the breach-of-contract claim alleged is really for a breach of contract or simply a restatement of a negligence claim in contract terms. In making that determination, the nature of the damages sought and whether the alleged breach implicated a dereliction of the duty owed by the health care provider are appropriately considered. 89 A.L.R.4th at 890. But because the superior source of law in our civilian jurisdiction is legislation, see La. C.C. art. 1 and its 1987 Revision Comment (a), and the clear and unambiguous definition of malpractice provided for in La. R.S. 40:1299.41 A(8) encompasses this claim by the Muses, we rely on the express language defining malpractice contained in the MMA to conclude the breach of the stipulation pour autrui claim asserted by the Muses falls within the ambit of the MMA.