STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CODY PARKER

VERSUS

AMERICAN WESTERN HOME INSURANCE COMPANY, ET AL.


**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2016-0959-A
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Marc T. Amy, Judges.


REVERSED AND REMANDED.

R. Scott Iles
1200 West University Avenue
Lafayette, LA 70506
P.O. Box 3385
Lafayette, LA 70502
(337) 234-8800
COUNSEL FOR PLAINTIFF-APPELLANT:
    Cody Parker

Richard J. Petre, Jr.
Onebane Law Firm
P.O. Box 3507
Lafayette, LA 70502-3507
(337) 237-2660
COUNSEL FOR DEFENDANT-APPELLEE
    American Western Home Insurance Company

**COOKS, Judge.**

Plaintiff-appellant, Cody Parker appeals the trial court's grant of summary judgment in favor of the insurer, American Western Home Insurance Company, finding the business exclusion contained in its policy did not provide coverage for Plaintiff's injuries. Finding summary judgment was improperly granted in this case, we reverse the trial court's judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The facts establish Mike Blakly purchased the mobile home in question approximately ten years prior to the occurrence of the subject accident. Blakly lived in the mobile home until sometime in 2015. At that time, Blakly refinanced the mobile home and land on which it rested to acquire different property. Blakly and his wife, Deborah Armentor, then moved to that property.

The mobile home remained "empty for a few months," until Blakly's daughter, Imarie Blakly, began living there. She lived in the mobile home for approximately six months. There was testimony that a rental agreement was signed by Imarie, although she did not pay rent. Blakly testified he prepared a rental agreement for his daughter because "[s]he wanted one[.]" Blakly further testified when Imarie's boyfriend began living there, Blakly expected to receive rent. Blakly ultimately had the couple evicted from the mobile home for failure to pay rent.

After the eviction of Imarie and her boyfriend, Jeromie and Krissi McCann became aware of the empty trailer and inquired to a friend as to its availability. Eventually they were given Blakly's number and contacted him in regard to the mobile home. The McCanns maintained they discussed renting the mobile home, with the intent to purchase. There was a "Rent to Own Lease Agreement" prepared, which contemplated a purchase price conditioned on Blakly's financing and interest rate. The agreement stated in part, "[t]he total price for the property is $46,000.00 unless the rate of interest is changed when seller refinances balloon note on

2

November 5, 2018. At this time the seller and buyer will renegotiate to satisfy the original bank note due." The contemplated rent-to-own agreement also required a non-refundable fee deposit of $7,000.00.

The rental agreement signed contained the following language as to the rent due:

> Monthly Rental will be paid on the 1st of each month in the sum of $600.00 which $530.00 will be applied to the price agreed on in section 2 of the leases when criteria is met and agreed to at that time.
>
> If Rent to own is not fulfilled it will not be applied to ownership of property as in section two.

The parties ultimately signed a "Month to Month Rental Agreement" on January 31, 2016, which set forth a $600.00 monthly rental fee. The McCanns paid $5,000.00 of a requested $7,000.00 deposit on February 18, 2016. Krissi McCann testified Blakly was informed the $5,000.00 was all they could afford and believed this deposit would apply to the understood rent-to-own arrangement. The McCanns believed upon paying all mortgage debt on the property, they would own the premises, including the mobile home. According to the Jeromie McCann there was no question they were "planning on buying the place from [Blakly] until he decided he wanted to take some of the land and move onto it during his divorce."

The testimony established that after the McCanns moved into the mobile home in February of 2016 (the testimony is conflicting on the exact date), Blakly moved back on to the 3.17 acres upon which the mobile home was located. He apparently stayed in a shed which he purchased after he and his wife separated. Jeromie McCann testified that when Blakly moved onto the property, they decided not to go forward with the purchase. The McCanns took the position the parties agreed the $5,000.00 deposit they paid should go toward rent owed. Blakly insisted the deposit was not meant to apply to rent.

3

According to Jeromie, Blakly began telling him in July of 2016 that they needed to leave his premises. On October 25, 2016, Blakly issued a Notice to Vacate to the McCanns. A Rule to Evict was issued on November 16, 2016, and the matter was heard before the district court on November 28, 2016. The trial judge made the following comment at trial:

> This is the problem with people that don't go to lawyers to get their legal work done or approved. You've got a document here that's sort of three different things all in one, and it's not really any of them.

At the hearing, the McCanns informed the trial judge they were agreeing to vacate the mobile home. The trial court then issued a judgment requiring the McCanns to vacate by midnight on November 30, 2016. The trial judge also credited the McCanns $800.00 as overpayment of rent from the $5,000.00 deposit made on February 18, 2016.

Pertinent to this appeal, on August 19, 2016, Plaintiff, Cory Parker, was visiting his sister, Krissi McCann at the mobile home in question. During the visit, Parker fell through the kitchen floor of the mobile home. Parker maintained he sustained significant personal injuries as a result of the fall, including, but not limited to, a L4-5 fracture.

As a result of his injuries, Parker filed a personal injury lawsuit against Blakly and his homeowner's insurer, American Western Home Insurance Company. Parker asserted the sole cause of the accident was the negligence of Blakly in not maintaining the home in a suitable condition.

In response to the lawsuit, American Western filed a motion for summary judgment on the issue of liability. Specifically, American Western argued they were not liable due to a business exclusion in the policy which excluded damages "arising out of or in connection with a business conducted from an insured premises or engaged in by an insured person[.]" American Western contended the renting of property is a business activity and Blakly was renting the mobile home at the time

4

of the incident. Parker argued this business exclusion contained an exception for the rental of the insured premises "on an occasional basis if used only as a residence."

The trial court agreed with American Western's arguments and granted the motion for summary judgment in favor of American Western, dismissing Plaintiff's claims against it with prejudice. This appeal followed, wherein Plaintiff contends the trial court erred in granting American Western's motion for summary judgment.

## ANALYSIS

Plaintiff appeals the trial court's grant of summary judgment in favor of American Western that found the insurance policy in question did not cover Plaintiff's injuries. Plaintiff argues there is a genuine issue of material fact as to whether the business exclusion applies, and even if it does, whether the occasional business exception is applicable.

Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(A)(3). The burden of proof on a motion for summary judgment is on the movant to establish that no material factual issues exist. La.Code Civ.P. art. 966(D)(1); *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991). "Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted." *Chaisson v. Domingue*, 372 So.2d 1225, 1227 (La.1979). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Westerfield v. LaFleur*, 493 So.2d 600 (La.1986). Appellate review of summary judgment is de novo, utilizing the same criteria that guide the trial court's grant of the judgment. *Guillory v. Interstate Gas Station*, 94-1767 (La. 3/30/95), 653 So.2d 1152.

5

A dispute as to the issue of whether the language of an insurance policy provides coverage to a party can properly be resolved within the context of a motion for summary judgment. *Domingue v. Reliance Ins. Co.*, 619 So.2d 1220 (La.App. 3 Cir. 1993). The insurer bears the burden of proving that a loss falls within a policy exclusion. *Blackburn v. Nat'l Union Fire Ins. Co.*, 00-2668 (La. 4/3/01), 784 So.2d 637. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Beck v. Burgueno*, 43,557 (La.App. 2 Cir. 9/17/08), 996 So.2d 404.

Further, the Louisiana Supreme Court in *Veuleman v. Mustang Homes, LLC*, 13-190, p. 1 (La. 4/5/13), 110 So.3d 572, 573, found when an exclusion to a policy has an exception that would allow for coverage, "[i]f the exception is met, the exclusion does not apply. The insurer retains the burden of proving that the exception is *not* met in order to show that the exclusion does apply." Plaintiff maintains, in this case, even if the exclusion were found to be applicable, the "occasional basis" exception found in the policy would allow for coverage.

The policy issued by American Western to Blakly contained the following "business pursuits" exclusion:

> 1.    Under PERSONAL LIABILITY and MEDICAL PAYMENTS TO OTHERS, we do not cover bodily injury or property damage:
>
> . . . .
>
> c.    arising out of or in connection with a business conducted from an insured premises or engaged in by an insured person. This applies whether or not the business is owned or operated by an insured person or employs an insured person.
>
> This exclusion (1.c.) applies, but is not limited to, an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

This Exclusion (1.c.) does not apply to the rental or holding for rental of an insured premises:

(1) on an occasional basis if used only as a residence; or

(2) In part for use only as a residence, unless a single family unit is intended for use by an occupying family to lodge more than two roomers or boarders;

American West maintained the business exclusion applied because Blakly was renting his home to the McCanns at the time of Plaintiff's injury. The policy defines "business" as "any trade, profession, occupation or service of an insured person. 'Business' includes any part-time, temporary, or permanent activity engaged in for compensation."

Plaintiff countered that there was no evidence that Blakly's attempt to sell his property was a "business," and that the evidence preponderated that Blakly only intended for the rent to simply cover the bank note on the motor home and property. Thus, Plaintiff argued since the rent was only intended to cover what Blakly owed on the mortgage, he was not being personally compensated and the rental arrangement was not an activity engaged in for compensation.

Examining the testimony in the record, we note Blakly himself testified "all of that rental money would be applied to paying off the debt on the trailer[.]" Although Blakly's daughter stayed in the trailer for several months, he testified he only drew up a rental agreement because "[s]he wanted one[.]" Moreover, Blakly testified he did not require his daughter to pay rent when she initially began staying in the mobile home. It was not until she allowed her boyfriend to move in with her that Blakly required the payment of rent.

There was no indication that Blakly advertised the motor home for rent and it was uncontroverted that the McCanns approached Blakly about renting the mobile home after hearing about it from a friend. Jeromie McCann specifically testified that

Blakly desired to sell them the property, stating he "was really wanting to sell it, you know, so he could pay the bank off."

Examining the record before us, there are genuine issues regarding whether the arrangements by Blakly with his daughter and later with the McCanns were part of a business venture excluded by the policy. In *Richard v. Milazzo*, 01-2233, p. 4 (La.App. 1 Cir. 11/8/02), 831 So.2d 1055, 1058-59, the court discussed what a business exclusion involves, stating:

> As noted in *The Law of Liability Ins.*, Rowland Long, Matthew Bender & Co., Inc., § 9.06[2]:
>
> Many courts that have examined the definition of business and the business pursuits exclusion agree that a business pursuit must involve two elements: continuity of the activity, and monetary gain, or at least the hope or expectation of monetary gain.

The evidence establishing any "continuity" of rental activity on Blakly's part is disputed. There also is a genuine question whether Blakly received any monetary gain. The testimony indicated the arrangements were just an attempt by him to cover the note he owed the bank.

The jurisprudence has uniformly held "[s]ummary judgment is seldom appropriate when there is a question relating to subjective facts such as intent, knowledge, motive, malice or good faith. *Durrosseau* [*v. Century 21 Flavin Realty, Inc.*, 594 So.2d 1036 (La.App. 3 Cir.1992)]; *Penalber v. Blount*, 550 So.2d 577 (La.1989)." *Martin v. CNA Ins. Co.*, 96-1342, p. 2*3 (La.App. 3 Cir. 4/2/97), 692 So.2d 677, 678.

Moreover, even were we to find Blakly's handling of the property falls under the business exclusion of the policy, we find it clear American Western has not carried its burden to prove that the "occasional basis" exception to the business exclusion does not apply. This finding also would require this court to reverse the trial court's grant of summary judgment. The case of *LeCompte v. Lafayette Ins.*

*Co.*, 00-1547 (La.App. 1 Cir. 9/28/01), 813 So.2d 432, involved very similar facts as the instant case. In *LeCompte*, a little girl was injured while visiting the home of the Mathernes, who, on that date, were renting the property from Walter Sawyer, who had a homeowner's policy of insurance from Lafayette Insurance Company. In that case, the Mathernes, who heard of the possible availability of the property through word of mouth, approached Sawyer about renting the property. They planned to lease the property until they could buy a new home. The Mathernes and Sawyer discussed the Mathernes purchasing the property at issue. When the Mathernes moved out after about ten months, Sawyer did not again lease the property. The record showed Sawyer "had rented the home under similar conditions to one other person" prior. *Id.* at 435. That renter, Linda Billiot, testified she had also heard of the property through word of mouth that Sawyer might consider leasing the property. When she approached Sawyer he agreed to lease her the property. Billiot testified Sawyer's stated goal was to sell the property.

The court noted the issue before it "involve[d] an exception to an exclusion in a property insurance policy where coverage [was] provided if owned property was rented to others on an 'occasional' basis." *Id.* at 434. The business exclusion in the Lafayette Insurance policy provided an exception, which stated "(1) On an occasional basis if used only as a residence." *Id.* This language is identical to the language found in the American Western policy in this case. The *LeCompte* court found, under the facts of that case, the rental made to the Mathernes was made on an occasional basis and not part of a continuous practice of leasing the property. The court concluded as follows:

> Under these undisputed facts, we cannot say as a matter of law that Sawyer's two rentals of the property at issue established a pattern of rentals so uninterrupted, so unbroken, or so persistently repeated at short intervals as to constitute virtually an unbroken series. Nor can we say Sawyer's lease of the property to the Mathernes was connected, extended, or prolonged without cessation or interruption to any prior or subsequent rental of the premises. The attempts to sell intervened. We

9

therefore conclude the rental to the Mathernes was made on an "occasional" basis.

In support of this conclusion we cite the following federal cases. In *Insurance Company of North America v. Howard*, 679 F.2d 147, 149 (9th Cir.1982), the court concluded under similar circumstances that, "[a] recent widow who leases her home for a one-year period (with or without a 30 day cancellation provision) while she attempts to resolve her future plans has certainly not gone into the business of renting homes. Her action was a temporary expedient and constitutes an occasional rental." In *American Family Mutual Insurance Company v. Richardson*, 517 F.Supp. 125, 128 (E.D.Mo.1981), the court ruled:

> [T]he rental of the old frame house was occasional in that the farmhouse was not rented and/or occupied continuously from tenant to tenant.

> * * * * *

> Further support for the premise that the rental of the farmhouse was not a business pursuit is evidenced by the fact that the rental of the farmhouse was by oral month to month tenancies; there was no formal advertising of the farmhouse in the news media, and occupants were obtained solely by word of mouth.

. . . .

The undisputed facts before us, however, establish under this definition that Sawyer was not holding the subject property for rental. Rather, he was holding the property for sale, at least during the periods before and after the two tenancies. And the lease to the Mathernes, during whose tenancy the alleged injury occurred, was "occasional" in that it was made as the opportunity required or admitted.

The undisputed facts in this case establish that Sawyer was not continuously renting or holding for rental the premises at issue here when Tayler LeCompte allegedly suffered personal injury. By definition, then, the property was being leased on an occasional basis.

*Id.* at 436-37.

As in *LeCompte*, we cannot say at this stage the record establishes, as a matter of law, that Blakly's two rentals of the property at issue "established a pattern of rentals so uninterrupted, so unbroken, or so persistently repeated at short intervals as to constitute virtually an unbroken series." *Id.* at 436.

The record also indicates Blakly's primary intent after his daughter left the property was to sell, rather than rent. Deborah Armentor, Blakly's wife at the time,

10

stated in her deposition that after Blakly's daughter left the premises, "we had tried to sell it, and we couldn't[.]" The McCanns maintained they discussed renting the mobile home, with the intent to purchase. There was a "Rent to Own Lease Agreement" prepared, though never signed, which contemplated a purchase price conditioned on Blakly's financing and interest rate. According to Jeromie McCann Blakly "was really wanting to sell it, you know, so he could pay the bank off." McCann also testified Blakly supplied him with appraisal documents on the property. Jeromie McCann also testified "[w]e was actually planning on buying the place from [Blakly] until he decided he wanted to take some of the land and move onto it during his divorce." These additional facts are sufficient to put at issue, as in LeCompte, whether Blakly's rental of the property to the McCanns was "connected, extended, or prolonged without cessation or interruption to any prior or subsequent rental of the premises" as to fall within the policy's exclusionary language. *Id.* at 436. Likewise, as in *LeCompte* the "attempts to sell intervened" between the two rental periods. *Id.* at 436.

American Western argues *LeCompte* is an outlier and concludes its "ruling is questionable." It offers several decisions from other states in support of its contention that the occasional rental basis exception does not apply herein. We disagree and find, at a minimum, the holding in *LeCompte* has not been expressly rejected by the courts in Louisiana. As in *LeCompte*, the record before us establishes there is a dispute as to whether Blakly was continuously renting or holding for rental the premises at issue when Plaintiff sustained his injuries. Considering the evidence in the record, there are genuine issues of material fact as to whether the property at issue was being leased on an occasional basis. Therefore, the trial court erred in granting American Western's motion for summary judgment.

**DECREE**

For the foregoing reasons, the judgment of the trial court is reversed, and the matter is remanded for further proceedings. All costs of this appeal are assessed against defendant-appellee, American Western Home Insurance Company.

**REVERSED AND REMANDED.**