# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 22-395

DARRELLYN HAYES
ON BEHALF OF FABEKA HAYES

VERSUS

CHURCH'S CHICKEN

\*\*\*\*\*\*\*\*\*\*

ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 9
PARISH OF IBERIA, NO. 20-07410
ELIZABETH C. LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles
G. Fitzgerald, Judges.

**AFFIRMED.**

**Roger A. Javier**
**The Javier Law Firm, LLC**
**1340 Poydras Street, Suite 2100**
**New Orleans, Louisiana  70112**
**(504) 599-8570**
**COUNSEL FOR CLAIMANT/APPELLANT:**
**Darrellyn Hayes**


**Philip J. Borne**
**Kyle D. Anderson**
**Christovich & Kearney, LLP**
**601 Poydras Street, Suite 2300**
**New Orleans, Louisiana  70130**
**(504) 561-5700**
**COUNSEL FOR EMPLOYER/APPELLEE:**
**Cajun Operating Company**
**d/b/a Church's Chicken**

**PERRY, Judge.**

In this workers' compensation case, the issue before us is whether the employee's death arose out of her employment, which would entitle the deceased employee's mother to benefits under Louisiana's workers' compensation statutes. For the reasons stated below, we find her death did not.

## FACTS AND PROCEDURAL HISTORY

On May 12, 2020, Fabeka Hayes ("Fabeka") was working as a manager of Church's Chicken located at 601 West Saint Peter Street, New Iberia, Louisiana. At approximately 10:00 p.m., Fabeka was in the process of closing the restaurant when Clarence Joseph Payton ("Payton") entered the establishment and fatally shot her.

Darrellyn Hayes ("Appellant"), Fabeka's mother, filed a disputed claim for compensation on December 16, 2020. Therein, Appellant sought death benefits, burial expenses, penalties, attorney fees, costs, and judicial interest.

Fabeka's employer, Cajun Operating Company doing business as Church's Chicken ("Church's Chicken"), answered asserting an affirmative defense. Specifically, it alleged "[t]he death of employee, Fabeka Hayes, on May 12, 2020[,] is not compensable pursuant to La.R.S. 23:1031(E)" which provides:

> An injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment.

Following trial on February 15, 2022, the workers' compensation judge ("WCJ") found Fabeka's death did occur within the course and scope of her employment with Church's Chicken on May 12, 2020, but Fabeka's death did not arise out of her employment duties with Church's Chicken. Specifically, the WCJ concluded that "the death of [Fabeka] revolved around a domestic dispute with Clarence Payton, [Fabeka]'s estranged boyfriend/domestic partner, and thus was a

dispute with another person over matters unrelated to the employee's job." As a result, judgment was rendered in favor of Church's Chicken, dismissing Appellant's claims with prejudice.

## APPELLANT'S ASSIGNMENT OF ERROR

On appeal, Appellant contends:

> The trial court erred in dismissing Appellant's claims for death benefits, funeral expenses, attorney fees, costs[,] and judicial interest. Defendant did not meet its burden of proving Fabeka Hayes[] was engaged in a "dispute" at the time she was fatally shot by Clarence Payton during the course and scope of her employment. Therefore, the trial court's Judgment finding was manifestly erroneous in light of the evidence and should be reversed.

## APPELLANT'S ARGUMENT

Appellant contends the evidence proves there was no altercation or dispute, but rather a unilateral violent, physical attack on Fabeka. Thus, Appellant argues the judgment of the WCJ denying workers' compensation benefits was manifestly erroneous.

## APPELLEE'S POSITION

Church's Chicken contends the evidence proves Fabeka's death arose out of a domestic dispute with Payton and was a matter unrelated to her employment. Thus, Church's Chicken argues the WCJ properly found Fabeka's death did not arise out of her employment duties and, therefore, Appellant is not entitled to benefits under Louisiana's workers' compensation statutes.

## LAW AND DISCUSSION

To establish entitlement to workers' compensation benefits, a claimant must show that a personal injury was sustained by an accident arising out of and in the course and scope of employment. La.R.S. 23:1031(A). Factual findings in workers' compensation cases are subject to the manifest error standard of review. *Buxton v. Iowa Police Dep't*, 09-520 (La. 10/20/09), 23 So.3d 275.

2

Appellant argues Church's Chicken did not meet its burden of proving that Fabeka was engaged in a dispute at the time she was fatally shot by Payton. Rather, Appellant contends the evidence shows Fabeka had ended the relationship and severed all ties with Payton days before she was killed. Appellant further asserts video surveillance of the event clearly shows Fabeka did not actively engage or fight back with Payton before being fatally shot. Therefore, Appellant argues the WCJ was clearly wrong in finding Fabeka was engaged in a dispute with Payton at the time of her death.

Church's Chicken argues Fabeka's death did not arise out of her employment; rather, Fabeka's death at Payton's hands regrettably arose out of a domestic dispute which coincidentally occurred at Fabeka's place of employment. Church's Chicken notes that, in its Reasons for Judgment, the WCJ found "this was a domestic dispute" and further declared "[d]omestic violence is or consists of matters unrelated to employment." To support its contention that Fabeka's death did not arise out of her employment, Church's Chicken relies on the holding in *Guillory v. Interstate Gas Station*, 94-1767 (La. 3/30/95), 653 So.2d 1152. Therein, the supreme court noted, "[t]he principal objective of the 'arising out of employment' requirement is to separate accidents attributable to employment risks, which form the basis of the employer's obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible." *Id.* at 1154. Church's Chicken also points to Appellant's testimony as the evidence most supportive of its contention that Fabeka's death arose out of a dispute with Payton over matters unrelated to Fabeka's employment. We agree.

In the instant case, Appellant testified that Fabeka and Payton lived together for approximately twelve years, and, on at least two occasions, Payton threatened or attempted to kill Fabeka. The first incident occurred while Payton and Fabeka lived

3

with Appellant. Payton threatened to kill Fabeka, and members of Fabeka's family physically attacked Payton. The second incident occurred only four days before Fabeka was killed by Payton. According to Appellant, on May 8, 2020, Payton choked and tried to kill Fabeka, which caused Fabeka to leave the home she shared with Payton and move into Appellant's home. Appellant recalled that the last time she saw Fabeka was May 10, 2020, on the morning Appellant travelled out of state and, according to Appellant, no communication occurred between Fabeka and Payton from May 8, 2020, until May 10, 2020.

Although Appellant argues the WCJ erred in concluding that an ongoing domestic dispute with Payton existed when Fabeka was fatally shot, the record before us proves otherwise. In fact, we find the following colloquy, with Appellant under cross-examination, significant:

> Q. Now, what happened on May 8, 2020?
>
> A. He had her in a chokehold.
>
> Q. How do you know that?
>
> A. Because I seen her neck, and she came to my house and she told me and I seen where he had -- where her neck was all bruised up.
>
> Q. And did he threaten to kill your daughter?
>
> A. Yes, he threatened to kill her.
>
> Q. So on May 8, 2020, Clarence Payton threatened to kill your daughter?
>
> A. Yes. He had her in a chokehold, my daughter said, "Mom, Clarence had me in a chokehold, he was trying to kill me."
>
> Q. And what did your daughter decide to do at that point?
>
> A. My daughter, when she came to find me, she stayed with me.
>
> Q. And did she tell you that she told Mr. Payton that she was leaving him?
>
> A. Yeah, she did say that she was leaving him.

4

Q. So, according to your testimony, your daughter was put in a chokehold by Clarence Payton on May 8, 2020[?]

A. Yes.

Q. And told him that she was going to leave him[?]

A. Yes.

Q. And he said that he was going to kill her[?]

A. Yes.

Q. And that's what he did five days later?

A. Yes. He already had that plan.

Q. What's that?

A. I said he already had that plan.

Q. So he already had this plan to kill her and it just so happened to happen while she was at Church's Chicken?

A. (Nodding head.) . . . Yes.

Consequently, we find no manifest error in the WCJ's conclusion that Fabeka's death was the result of an ongoing domestic dispute between the couple. The dispute was in no way connected to Fabeka's employment except for the fact that it occurred at her place of employment. Under these facts, Church's Chicken has clearly shown that the dispute was unrelated to Fabeka's employment; thus, her death is not considered as having arisen out of the employment and is, therefore, not covered under Louisiana's workers' compensation statutes.

**DECREE**

The judgment is affirmed. All costs are assessed against Claimant/Appellant, Darrellyn Hayes.

**AFFIRMED.**