CHEHARDY, C.J.
liOn appeal, plaintiffs challenge the trial court’s ruling granting defendant’s motion for summary judgment. For the following reasons, we affirm.
Facts and Procedural History
On March 13, 2013, during the course and scope of his employment with River Parish Maintenance at Motiva Enterprises, LLC’s manufacturing complex, Michael J. Louque, Sr. was killed when heavy equipment being loaded onto a flatbed truck by forklift rolled off of the truck onto him.[1] On March 3, 2014, Audrey Lou- *1206 que individually, and on behalf of their minor daughter, Tracey Louque, and Michael J. Louque, Jr. (hereinafter collectively “the Louques”) filed suit seeking damages for the wrongful death of their husband and father. In their lawsuit, the Louques named as defendants: Daimler Trucks North America, LLC; United Rentals-North America Inc.; Penske Truck Leasing Co., L.P.; Toyota Motor Sales, USA; Scott Equipment Sales; H & E Equipment Sales, Inc.; and Motiva Enterprises, LLC.
Several defendants, including Motiva Enterprises, LLC (hereinafter “Motiva”) filed exceptions and several defendants answered, raising affirmative defenses. More specifically, Motiva filed an exception of no right of action, pursuant to La. C.C.P. art. 927. In its exception, Motiva asserted that Mr. Louque was its “statutory employee,” and, thus, Motiva was immune from liability under the Louisiana Workers’ Compensation Act. The trial court sustained Moti-va’s exception and dismissed the case against Motiva, The Louques appealed that judgment.
On appeal, this Court reversed that judgment and remanded for further proceedings. Louque v. Scott Equip. Co., LLC, 15-43 (La.App, 5 Cir. 4/29/15), 170 So.3d 335. Specifically, we found:
| aIn this case, unlike other contracts of this ilk that have been reviewed by this Court, Motiva is not listed as an affiliate, subsidiary, or buyer but rather as a location for services. Our de novo review reveals that Motiva failed to establish itself as Mr. Louque’s statutory employer and, thus, the trial judge erred in sustaining its exception of no right of action. Accordingly, we reverse that ruling and remand the matter for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against Motiva Enterprises, LLC. (Footnotes omitted).
Id. at 340.
On June 29, 2015, Motiva answered the petition and asserted, among others, the statutory employer defense.[2] On November 24, 2015, Motiva filed a motion for summary judgment on the basis that it was immune from tort liability under La. R.S. 23:1061 et seq. because Mr. Louque was Motiva’s statutory employee. In support of its motion, Motiva attached, among other things, an affidavit from its General Counsel Christopher Vice; a copy of RPM’s incident investigation report; an OSHA investigation report; witness depositions; the Procurement Agreement No. NS-012808-CAP with Alterations; and Purchase Orders from Motiva to RPM.
To their opposition to Motiva’s motion for summary judgment, the Louques attached an affidavit from A.J. McPhate, Mechanical Engineer; and excerpts of witness depositions.
On April 11, 2016, the trial judge granted Motiva’s motion for summary judgment and dismissed the Louques’ claims with prejudice. The Louques appeal that ruling.
On appeal, the Louques raise five assignments of error: first, the trial court erred in considering incompetent summary judgment evidence; second, the trial court erred in relying on parole evidence to determine statutory employer status; third, the trial court erred in relitigating the statutory employment issue; fourth, the trial court erred in refusing to recognize that intentional torts are an exception to lathe exclusivity provision; and fifth, the *1207 trial court failed to consider that Texas law may apply to this case based upon the choice of law provisions in the contract.
Standard of Review
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Hogg v. Chevron USA, Inc., 09-2632 (La. 7/06/10), 46 So.3d 991, 996; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991).
Law and Argument
Appellants’ first and second assignments of error concern the technical aspects of the trial court’s grant of summary judgment. Specifically, appellants argue that the trial court improperly considered incompetent evidence submitted by Motiva before granting summary judgment. Further, appellants argue that the trial court improperly considered parole evidence before granting summary judgment.
First, we cannot determine from the record which evidence the trial court considered before granting summary judgment. More importantly, as noted above, this Court reviews summary judgments de novo, which means an “appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law.” Smith v. Our Lady of the Lake Hosp., 93-2512 (La. 7/05/94), 639 So.2d 730, 750. Thus, with respect to the Louques’ first assignment of error, we find no merit as we will consider only the competent summary judgment evidence in our de novo review.
With respect to the Louques’ second assignment of error, we find no need to consider whether the trial judge relied on parole evidence in granting summary | Judgment because, upon de novo review, we find that the competent evidence supports summary judgment in favor of Moti-va as discussed below.
In their third and fourth assignments of error, the Louques challenge the trial court’s grant of summary judgment that Motiva was Mr. Louque’s statutory employer. A motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art, 966(B)(2).[3] Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits. Id. .
When the motion for summary judgment was filed, La. C.C.P. art. 966 (F)(2) and (3)[4] provided:
(2) Evidence cited in and attached to the motion for summary judgment or memo *1208 randum filed by an adverse party is deemed admitted for purposes of the motion for summary judgment unless excluded in response to an objection made in accordance with Subparagraph (3) of this Paragraph. Only evidence admitted for purposes of.the motion for summary judgment may be considered by the court in its ruling on the motion.
(3) Only objections to evidences in support of or in opposition to a motion for summary judgment may be raised in memorandum or written 'motion to strike stating the specific grounds therefor.
Under . the Louisiana Workers’ Compensation Act, La. R.S. 23:1032, an employee injured in an accident while in the course and scope of his employment Lis generally limited to the recovery of workers’ compensation benefits as his exclusive remedy against his employer and may not sue his employer, or any principal, in tort. See Deshotel v. Guichard Operating Company, Inc., 03-3511 (La. 12/17/04), 916 So.2d 72, 76-79.
La. R.S. 23:1032 provides as follows:
A. (l)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under- any dual capacity theory or doctrine.
(2) For purposes of this Section, the word “principal” shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
The Louisiana Workers’ Compensation Act applies both to a direct employer/employee relationship as well as to a statutory employer/employee relationship. In its entirety, La. R. S. 23:1061, which codifies the “statutory employer” doctrine, reads:
A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any “principal” as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the “contractor,” for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and | ¿where compensation is claimed from, or proceedings are taken against, the *1209 principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.
(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee’s immediate employer.
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor’s employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee’s immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor’s employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor. (Emphasis added).
The determination of statutory employer status is a question of law for the court to decide. Ramos v. Tulane Univ. of La., 06-0487 (La.App. 4 Cir. 1/31/07), 951 So.2d 1267.
In this ease, the essence of the Louques’ argument is that the trial court erred in finding that Motiva was entitled to statutory employer status under La. R.S. 23:1061(A)(3) because Motiva was not specifically named in the contract between Shell Oil and River Parish Maintenance.
|7In support of its motion for summary judgment, Motiva attached to its motion a copy of the contract at issue, which is the “Procurement Agreement” between Shell Oil Products US as Buyer, and River Parish Maintenance, Inc. as Contractor. The agreement to procure “Miscellaneous Non-Skilled Maintenance Services” was executed in 2008, then extended through written “alterations” until January 31, 2015. The contract, which was the basis of RPM’s relationship with Shell, was in existence on March 13, 2013, the date of the incident that caused Mr. Louque’s death.
The “Procurement Agreement” contains, at Clause 27, the following Statutory Employer provision:
While Contractor [River Parish Maintenance, Inc.] and any of its employees, agents, or subcontractors are performing Services under this Purchase Contract in the State of Louisiana, such work in whole or in part is a part of the trade, business or occupation of Buyer and is an integral part of and essential to the ability of Buyer to generate its goods, products and services. Buyer or any of its Subsidiaries or Affiliates involved in the Services performed hereunder in Louisiana shall be considered *1210 a statutory employer within the meaning set forth in La. [R.S.] 28:1061 of those employees, agents, and subcontractors of contractor performing Services hereunder in Louisiana and such employees, agents, and subcontractors shall be considered statutory employees as the meaning is set forth in La. [R.S.] 23:1061. (Emphasis added.)
To its motion for summary judgment, Motiva attached the deposition testimony of the Contract and Procurement Manager for its Norco Facility, Kevin Petit. Kevin Petit, who, from 2010 to 2013, signed the alterations to the “Procurement Agreement” with RPM on behalf of Motiva, also stated that Motiva is an “Affiliate” to Shell Oil Products US and Shell Oil Company— Commingled.
In Clause 1 of the Agreement, “Buyer” is defined as “the Buyer Company with respect to each Purchase Contract it enters into for the purchase of Services.” In that same clause, a “Purchase Contract” is defined as “the binding contract given rise to by the Buyer’s issuance and Contractor’s acceptance of a Purchase Order with the acceptance either by giving express written notice to Buyer of | sacceptance, or by commencing the Services in accordance with the Purchase Order.”
Further, Clause 29.1 of the “Procurement Agreement” reads, “This Agreement together with the terms of any Purchase Order constitutes the whole and only agreement between the Parties relating to its subject matter and supersedes and extinguishes any other agreement, document or pre-contractual statement relating to the same subject matter.” Finally, Motiva attached Purchase Order No. 4700003874 dated October 16, 2012, for labor services, between “Motiva Enterprises LLC (Herein called “Buyer”)” and “River Parish Maintenance” as the Vendor.
Thus, under La. R.S. 23:1061(A)(3), we find that . Motiva succeeded in submitting evidence that it was a “Buyer” as listed in the written contract between Shell Oil and RPM, Mr. Louque’s immediate employer. Accordingly,-we find that Motiva presented sufficient evidence that, pursuant to the contract at issue, it is a “Buyer ... involved in the Services performed hereunder in Louisiana,” and, as such, was Mr. Louque’s statutory employer within the meaning set forth in La. R.S. 23:1061. We, thus, affirm the trial court’s grant of summary judgment on that issue.
The Louques further argue that our previous finding regarding Motiva’s exception of no right of action is the law of the case and precludes our review of this issue. That policy applies against those parties involved in the litigation at the time of the prior decision and who have had their day in court. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). The law-of-the-case doctrine avoids indefinite reliti-gation of the same issue, allows consistent results in the same case, fairness to the parties involved, and affords an opportunity for argument and decision on the issue. Id.
| nObviously, the present appeal concerns the same parties involved in the same litigation as the previous appeal. However, the case is in a different posture than in our earlier opinion. Previously, this Court found that Motiva had not presented sufficient evidence at the hearing on the exception of no right of action that it was named as a Buyer or Affiliate in the contract at issue; however, after remand for further discovery, Motiva was able to establish with competent evidence that it is a Buyer or Affiliate in the contract. Accordingly, this Court’s prior ruling did not create the law of the case.
Furthermore, the Louques allege that the trial court erred in granting summary judgment because their allegations *1211 raise at least a genuine issue of material fact that the incident that caused Mr. Lou-que’s death was an intentional tort. La. R.S. 23:1032(B) provides an exception to the rule that workers’ compensation is the exclusive remedy for an employee injured at work, which reads: “Nothing in this Chapter shall affect the liability of the employer ... or employee of such employer ... to liability, civil or criminal, resulting from an intentional act.” In their brief, the Louques allege that Motiva’s intentional actions were “substantially certain” to injure Mr. Louque.
In order to prevail at trial, the Louques must show that the defendant’s procedure for loading the round cylinders onto a flatbed truck without safety rails was an intentional act, which was “substantially certain” to result in injury to Mr. Louque. The Louques contend that the facts of this case demonstrate that a genuine material issue of fact exists.
In Bazley v. Tortorich, 397 So.2d 475, 480 (La. 1981), the Supreme Court held that the words “intentional act” mean the same as “intentional tort” in reference to civil liability. The court defined the meaning of intent as follows: “[t]he meaning of ‘intent’ is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from |inhis conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result.” Id. at 481.
In White v. Monsanto Co., 585 So.2d 1205 (La. 1991), the Louisiana Supreme Court further explained the meaning of “intentional act” under La. R.S. 23:1032(B) as above, by adding the following statement:
Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
Id. at 1208 citing Bazley, 397 So.2d at 481.
The “intentional act” loophole in the exclusive remedy provision is a narrow one. The term “substantially certain” has been held to mean “nearly inevitable,” “virtually sure,” and “incapable of failing.” Bridges v. Carl E. Woodward, Inc., 94-2675 (La.App. 4 Cir. 10/12/95), 663 So.2d 458, 462-65, writ denied, 95-2735 (La. 1/26/96), 666 So.2d 674. “It requires more than a reasonable probability, even more than a high probability, that an accident or injury will occur.” Id. “Thus, even though a defendant’s conduct is negligent, or even grossly negligent, that conduct is not such as will allow the legal imputation of intent.” Hood v. South Louisiana Medical Center, 517 So.2d 469, 471 (La. App. 1st Cir. 1987).
Here, the judgment is silent with respect to the “intentional act” exception. It is well-settled, however, that where a judgment is silent as to any part of a demand or any issue that was litigated, that demand is deemed rejected. Southern Marine Sales, Inc. v. Matherne, 05-181 (La.App. 5 Cir. 11/29/05), 915 So.2d 1042, 1047; Mooers v. Sosa, 01-286 (La.App. 5 Cir. 9/25/01), 798 So.2d 200. Upon de novo review, we find that the Louques have offered no competent evidence to establish the actual knowledge and “substantial certainty” required for La. R.S. 23:1032, which makes the grant of summary judgment as to this issue appropriate.
_JjjIn their fifth assignment of error, the Louques contend that the trial judge has not yet decided which forum’s law governs. We note, however, that, in his ruling, the trial judge stated that Motiva seeks summary judgment that it is Mr. *1212 Louque’s statutory employer and “immune from tort liability pursuant to Louisiana Workers’ Compensation law.” Thus, we are inclined to believe that the trial judge has decided that Louisiana law governs at least the workers’ compensation issues in Mr. Louque’s case.
Pursuant to La. C.C. art. 3543, Louisiana law governs where there are “issues pertaining to standards of conduct and safety ... [and] the conduct that caused the injury occurred in this state and was caused by a person 'who was domiciled in, or had another significant connection with, this state.” La. C.C. art. 3543; Cunningham v. Northland Ins. Co., 00-888 (La. App. 5 Cir. 9/14/00), 769 So.2d 689, 690. Here, Mr. Louque, a Louisiana domiciliary, was employed by a Louisiana company at a Louisiana facility. There is no error in the trial court’s finding that the workers’ compensation fesues herein are governed by Louisiana law.
Conclusion
For the foregoing reasons, we affirm the trial court’s grant of summary judgment in favor of Motiva.
AFFIRMED.

. Mr. Louque and a co-worker were using a forklift to load 1-ton cylindrical pumps onto a flatbed truck.

. Assertion of "statutory employer" status under La. R.S. 23:1032 is an affirmative defense, which must be specifically pled in an answer and must be proven by the mover. La. C.C.P. art. 1005; Walls v. Am. Optical Corp., 98-0455 La. 9/08/99, 740 So.2d 1262, 1267; Berry v. Halston Well Serv., Inc., 488 So.2d 934 (La. 1986).

. La. C.C.P. art. 966 was amended by 2015 Act 422, § 2, effective January 1, 2016. However, the amendment of La. C.C.P. art. 966, "shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date.” Because this matter was pending adjudication before the effective date of the amendment, the prior version of La. C.C.P. art. 966 was the law in effect when Motiva's motion for summary judgment was filed on November 24, 2015.

. See fint. 3, supra.