STEPHEN MICHAEL BRIGHTBILL
(DECEASED)

VERSUS

CIRCUIT GRAND BAYOU, L.L.C.

NO. 21-CA-578

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7
STATE OF LOUISIANA
NO. 18-7214,
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING


May 11, 2022


**FREDERICKA HOMBERG WICKER**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson


**VACATED AND REMANDED**
  **FHW**
  **SMC**
  **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CARYL EAGER, THE WRONGFUL DEATH AND SURVIVAL BENEFICIARY
OF STEPHEN MICHAEL BRIGHTBILL, (D)
    David A. Bowling
    Jerald N. Andry, III

COUNSEL FOR DEFENDANT/APPELLEE,
CIRCUIT GRAND BAYOU, LLC DBA NO PROBLEM RACEWAY
    Jeffery Joseph Waltz
    Jill A. Waltz
    Connor Jacob Reinoso

**WICKER, J.**

Plaintiff-appellant, mother of decedent employee, appeals a summary judgment granted by the Office of Workers' Compensation, in favor of defendant-appellee, employer. For the reasons that follow, we vacate the compensation court's judgment and remand this matter for further proceedings consistent with this opinion.

## Factual and Procedural Background

This litigation arises out of a workers' compensation claim filed by Caryl Eager, mother of decedent, Stephen Michael Brightbill, against Circuit Grand Bayou, L.L.C. d/b/a No Problem Raceway ("Raceway").[1]

Beginning in 2013 and until his death on November 1, 2017, Mr. Brightbill, through his company, Performance Plus Automotive & Chassis, Inc. ("Performance"), performed the duties of a co-track manager at No Problem Raceway, located in Belle Rose, La.[2] Raceway is a motorsports and entertainment facility that contains an asphalt road course, a drag racing strip, and several acres used to host concerts, car shows, festivals, and other events. A bar, a concession stand, and gas pumps are also located on the premises.

On February 11, 2017, Mr. Brightbill entered into a "Track Rental Agreement" with Raceway to lease its drag racing strip for his annual three-day Halloween Bike Fest.[3] As per the agreement, the fest was originally scheduled to take place from Friday, October 20, 2017 through Sunday, October 22, 2017. The agreement called for an initial rental fee of $4,500, with any profits in excess of $4,500 to be divided equally between the parties. Pursuant to the provisions of the

---

[1] In the pleadings, motions, and discovery, Stephen Michael Brightbill has also been referred to as "Stevie Ray." For consistency, Mr. Brightbill will be referred to by the name appearing in the caption of the proceedings being reviewed by this Court.

[2] Mr. Brightbill was co-owner of Performance along with Danny Grisbaum.

[3] In the lease, Mr. Brightbill was referenced as "Stevie Ray" and he signed the agreement as "Stevie Ray Brightbill." Kent Broussard, who was a co-owner of Raceway and held the title of co-track manager, also signed the lease as a representative of Raceway. When the incident in question occurred, Kent Broussard, Harold Petit, and David Cannon were the owners of Raceway.

lease, because of inclement weather on the October 20, 2017 weekend, the fest was rescheduled for the following weekend, Friday, October 27, 2017 through Sunday, October 29, 2017.

Unfortunately, on October 27, 2017, torrential rain again caused the fest to be canceled. Since the event had been canceled, on Friday evening Mr. Brightbill and Barry Hebert, who was a full-time employee of Raceway, left the racing strip to dine, thereafter returning to the facility to spend the night.[4]

Upon returning to the facility later that evening, Mr. Brightbill decided to attempt to dispose of some of the excess accumulation of tires located in a tire pit at the rear of the facility. Mr. Brightbill intended to dispose of the tires by setting them on fire. Before Mr. Brightbill began burning the tires, according to Mr. Hebert, he asked Mr. Brightbill not to dispose of them by fire because of prior tire-burning incidents where local authorities had informed Mr. Brightbill that it was illegal to dispose of the tires by fire.

Nonetheless, Mr. Brightbill proceeded to burn the tires. As the tires burned, fumes and flames spread uncontrollably around the area. Mr. Brightbill used a Ford 555D Backhoe Tractor in an attempt to scatter and control the fire. Unfortunately, the tractor became lodged in the pile of burning tires, causing the fire to further spread and to engulf the tractor. As a result, Mr. Brightbill, who was operating the tractor, sustained serious burns and burn-related injuries. Although Mr. Brightbill initially declined medical treatment, four days later, on October 31, 2017, he sought treatment for his injuries, which had by then become much more serious. Mr. Brightbill expired because of his burn injuries on November 1, 2017.[5]

On October 24, 2018, Ms. Eager fax-filed a Disputed Claim for Compensation (Form LWC-WC-1008) with the Louisiana Office of Workers' Compensation,

---

[4] For the three-day fest, Mr. Brightbill and Mr. Hebert were staying at an apartment located at Raceway.
[5] Mr. Brightbill's cause of death was sepsis secondary to second and third degree burns.

District 7. In that petition, Ms. Eager alleged that on October 27, 2017, her late son, Mr. Brightbill, was an employee of Raceway, who had been injured in the course and scope of his employment, and that no death, medical, or funeral and burial benefits had been paid by Raceway. Raceway was named as the employer in the claim.[6] On February 21, 2019, Raceway and its workers' compensation insurer, Louisiana Construction and Industry Self-Insurers Fund ("LCISF"), filed an Answer to Ms. Eager's original and amended claim raising several defenses.

Pursuant to the compensation court's scheduling order, on October 28, 2019 and November 4, 2019, the parties filed their respective pre-trial statements. In its statement, Raceway contended that Mr. Brightbill was not its employee, but rather an independent contractor while working at Raceway. Raceway also contended that at the time he was injured, Mr. Brightbill was not acting within the course and scope of Raceway operations; rather, at that time he was operating as a lessee of the track.

On November 4, 2019, Raceway and LCISF also filed a Motion to Stay Trial, or Alternatively, Motion to Continue Trial and Extend Litigation Deadlines, arguing that the workers' compensation claim should be stayed until Ms. Eager's tort case arising out of the same incident, which had been filed in the 23rd Judicial District Court for the Parish of Assumption, had been resolved. To support their motion, Raceway and LCISF attached Ms. Eager's October 25, 2018 petition for damages wherein she asserted causes of action for wrongful death and a survival action against Raceway for its alleged acts of negligence in connection with the October 27, 2017 fire-incident. In her petition, Ms. Eager asserted that Mr. Brightbill was an independent contractor of Raceway as defined by the Louisiana Workers' Compensation Act and therefore, she had a cause of action in tort.[7]

---

[6] On January 4, 2019, Ms. Eager filed an amendment to her original claim to provide Raceway's address for service of process.

[7] Conversely, while before the compensation court, Raceway and LCISF argued that Mr. Brightbill was not a Raceway employee, but instead was an independent contractor. In its answer filed in the tort case, Raceway and its insurer in that case, New York Marine General Insurance Company alleged that Mr.

In reply, on November 4, 2019, Ms. Eager filed an Unopposed Motion/Request for Expedited Decision on Raceway's Motion to Continue Trial and Extend Litigation Deadlines, urging the workers' compensation court to grant Raceway's motion to continue the compensation trial as the November 25, 2019 trial date was fast approaching. In her motion, however, Ms. Eager specifically opposed Raceway's motion to stay the compensation proceeding pending the outcome of the tort case. On November 8, 2019, the workers' compensation court granted Raceway's motion to continue the trial, but scheduled the motion to stay for hearing on November 19, 2019. On November 20, 2019, the workers' compensation court granted the stay of its proceedings until the tort claim was resolved.

Following settlement of the tort case, in order to proceed with her workers' compensation claim, on November 13, 2020, Ms. Eager filed an Unopposed Motion to Lift the Stay and attached to her pleading the signed Motion and Order of Dismissal in the tort case.[8] The workers' compensation court granted the motion on November 20, 2020.

On January 12, 2021, Raceway and LCISF filed an exception of *res judicata*, contending that a compromise agreement had been reached in Ms. Eager's tort action against Raceway and its insurer in that case, New York Marine General Insurance Company ("NYMGIC"). Raceway further averred that Ms. Eager was not entitled to additional compensation under the Louisiana Workers' Compensation Act, as that would result in double recovery, since Mr. Brightbill's injuries had been compensated in the tort action. Raceway attached the order of dismissal to its exception.

---

Brightbill was a Raceway employee and therefore limited to recovery pursuant to the Louisiana Workers' Compensation Act, La. R.S. 23:1032.

[8] The signed tort case Dismissal Order was missing from the record before this Court. However, we point out that in Ms. Eager's motion, she attested to the dismissal being executed and the tort claim being dismissed.

On January 12, 2021, Raceway and LCISF also filed a Motion for Summary Judgment. In that motion, Raceway and LCISF argued that Ms. Eager was not entitled to workers' compensation death benefits because the Louisiana Workers' Compensation Act provides the exclusive remedy for employees who are injured in the course and scope of their employment. Raceway and its insurer further asserted that as Ms. Eager had recovered damages through the tort action, her workers' compensation claim should be dismissed.

On February 3, 2020, Ms. Eager filed an opposition to Raceway's exception of *res judicata* and attached a copy of the tort case release agreement executed by Ms. Eager on September 14, 2020, evidencing the compromise and settlement agreement between her, Raceway and NYMGIC, the insurer in that case. In her opposition to the exception, Ms. Eager averred that the exception should be overruled because in the settlement agreement, she had specifically reserved her right to pursue the worker's compensation claim in the tort case release pursuant to La. R.S. 13:4232(3).

On that same day, Ms. Eager also filed an opposition to Raceway's and LCISF's motion for summary judgment on the same grounds. During the February 11, 2021 hearing, after the supporting documents submitted by the parties had been properly introduced and filed into the record, the workers' compensation court overruled Raceway's exception of *res judicata*, finding the tort case release and dismissal documents contained language reserving Ms. Eager's rights to proceed with the workers' compensation claim. The compensation hearing officer rendered a written judgment on June 3, 2021. The parties have not appealed to this Court regarding that judgment.

During the February 11, 2021 hearing, the workers' compensation court also heard arguments on Raceway's motion for summary judgment, thereafter taking the matter under advisement. On June 3, 2021, the workers' compensation court hearing

officer rendered a judgment on that motion, with written reasons, granting Raceway's summary judgment. In its ruling, the compensation court hearing officer relied entirely upon the La. R.S. 23:1032 exclusivity provision to find:

> "…there are no genuine issues of material fact that the exclusivity provision of Louisiana Revised Statute §23:103223 applies, precluding Claimant from recovering in workers' compensation when she has already recovered in tort for the same cause of action."

The compensation court hearing officer, in her judgment and reasons for judgment, did not rule upon either Mr. Brightbill's status as an employee or independent contractor or whether, at the time he sustained his injuries, he was working in the course and scope of his Raceway duties.[9]

The court dismissed Ms. Eager's claim with prejudice. Accordingly, Ms. Eager has timely sought the instant devolutive appeal seeking review of the June 3, 2021 judgment granting Raceway's summary judgment.

### Assignments of Error

On appeal, Ms. Eager asserts five assignments of error: (1) the workers' compensation court committed error by granting Raceway's motion for summary judgment on the basis of an inadmissible settlement agreement; (2) the workers' compensation court erred in misinterpreting the exclusive remedy provision as a forfeiture provision when a worker or beneficiary finds it necessary to seek a tort settlement; (3) to the extent the judgment constitutes a ruling that Mr. Brightbill was an independent contractor not covered by the manual labor exception, the hearing officer erred; (4) to the extent the hearing officer found that the injury occurred outside of the course and scope of employment, the hearing officer erred; and (5) in addition to the ruling on the settlement evidence, the hearing officer's other evidentiary rulings were erroneous.

---

[9] In the record, there is no evidence that in the tort case the issues regarding Mr. Brightbill's status as an independent contractor versus an employee, or whether he was or was not acting within the course and scope of his duties at Raceway at the time he sustained his injuries, was addressed, litigated, or resolved.

**Standard of Review**

A summary judgment that dismisses all claims is a final, appealable judgment. La. C.C.P. arts. 968, 1915(A)(1, 3). Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Louque v. Scott Equip. Co., LLC*, 16-507 (La. App. 5 Cir. 2/8/17), 212 So.3d 1203, 1207, *writ denied*, 17-00372 (La. 4/13/17), 218 So.3d 629. Thus, appellate courts ask the same questions as the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. *Id.*

**Law & Analysis**

*Summary Judgment*

Summary judgment shall be granted, "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

Considering the applicable law governing summary judgment, as well as the compensation court hearing officer's judgment granting Raceway's and LCISFs' motion for summary judgment and dismissing Ms. Eager's compensation claim, the sole issue currently before this Court on review is whether Raceway and LCISF, as the movers, have come forth with sufficient evidence to show that Ms. Eager is not entitled to workers' compensation death benefits for her son's death when she has already recovered damages for his death in the tort action. We, however, decline to reach the merits of this appeal because, upon *de novo* review of the record before us, we find that the compensation court hearing officer was premature in her reliance upon the La. R.S. 23:1032 exclusivity provision to grant summary judgment. On the record before us, it is clear that the parties, through the course of both the tort case and the compensation claim, have contested Mr. Brightbill's status as a

Raceway employee, an independent contractor engaged in manual labor, or an independent contractor not engaged in manual labor. Furthermore, the parties also continue to dispute whether, at the time of his injury, Mr. Brightbill was acting within the course and scope of his Raceway duties. It is also clear on the record before us that neither the 23rd Judicial District Court, in the tort case, nor the Office of Workers' Compensation hearing officer, in the compensation claim, have addressed and resolved these issues. While the parties resolved the tort case through settlement, the settlement documents clearly reflect that the district court made no liability finding before the tort case settled, the defendant did not admit liability, and the plaintiff reserved her workers' compensation claims. We find no Louisiana case that addresses this unique set of facts. The applicability of the La. R.S. 23:1032 exclusivity provision to the unique facts particular to this case presents a *res nova* question, which this Court is loath to answer in the face of undecided preliminary issues.[10]

***Workers' Compensation Act***

Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032, an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer, or any principal, in tort. *Louque*, 170 So.3d at 338. *See Deshotel v. Guichard Operating Company, Inc.*, 03–3511 (La. 12/17/04), 916 So.2d 72, 76–79.

Specifically, La. R.S. 23:1032 provides:

> A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted *to an employee or his dependent on account of an injury,* or compensable sickness or disease *for which he is entitled to compensation under this Chapter*, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to

---

[10] Because we are reversing on other grounds and remanding for further proceedings, we pretermit discussion of Ms. Eager's assignments of error.

punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.

(2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

**[Emphasis added.]**

*Employer-Employee Relationship*

As a preliminary matter, the compensation court hearing officer was required to determine if Mr. Brightbill qualified as an employee under the Workers' Compensation Act. A prerequisite in any action under workmen's compensation is the existence of some kind of employer-employee relationship. *Robbins v. Lee*, 505 So.2d 1161, 1162 (La. App. 5th Cir. 1987), *writ denied*, 508 So.2d 827 (La. 1987). Without the employer-employee relationship, the injured employee cannot recover workers' compensation benefits. *Keller v. Evans Cooperage, Inc.*, 641 So.2d 552 (La. App. 5th Cir. 1994), *writs denied*, 94-2530, 94-2545 (La. 1/13/95), 648 So.2d 1339, citing *Wofford v. Dow Chemical*, 335 So.2d 536 (La. App. 1st Cir. 1976).

Further, La. R.S. 23:1044 provides that a "person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee...." This presumption is rebuttable. *Wilfred v. A. Serv. Cab Co.*, 14-1121, (La. App. 4 Cir. 5/27/15), 171 So.3d 1007, 1010, *writ denied*, 15-1271 (La. 9/25/15), 178 So.3d 570. "An alleged employer can rebut this presumption by either establishing that the services were not 'pursuant to any trade, business, or occupation (e.g., construction of one's private residence);' or establishing that 'the individual was performing services but was doing so as an independent contractor.'" *Hillman v. Comm-Care, Inc.*, 01-1140, (La. 1/15/02), 805 So.2d 1157, 1161 (quoting 1 Denis Paul Juge, Louisiana Workers' Compensation § 7:6 (2001)).

Considering whether the presumption is rebutted because the individual was performing services as an independent contractor is a factual determination, made on a case-by-case basis, taking into consideration the total economic relationship between the parties and the various factors weighing either in favor of or against an employer-employee relationship. *Course v. Fox Wolff Const.*, 08-58, (La. App. 5 Cir. 5/27/08), 987 So.2d 277, 280, *writ denied*, 08-1396 (La. 9/26/08), 992 So.2d 992. In determining whether the relationship is one of principal and contractor, the courts consider whether: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking; and (5) a specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach. *Id.*

If the presumption of employment is successfully rebutted, the burden of proof shifts to the party seeking to establish an employer-employee relationship. *Id.*

at 1011. If the employer successfully rebuts the presumption of employment, the next inquiry in determination of whether an employer-employee relationship exists is based upon the "the right to control." *Id*. The four primary factors evidencing the right to control are: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. *Id*. see also *Franklin v. Haughton Timber Co*., 377 So.2d 400, 406 (La. App. 2nd Cir. 1979), *writ denied*, 380 So.2d 624 (La. 1980). Stated differently, "[t]he right of control necessarily encompasses supervision, selection and engagement, payment of wages or salary and the power to dismiss." *Che v. First Assembly of God, Ruston, LA*, 50,360 (La. App. 2 Cir. 1/13/16), 185 So.3d 125, 133.

However, La. R.S. 23:1021(7) allows workers' compensation coverage for a certain type of independent contractor engaged in manual labor for a substantial part of the work time (and La. R.S. 23:1032 allows tort immunity to that type of independent contractor's "employer"). *Moss v. Tommasi Const., Inc*., 09-1419, (La. App. 3 Cir. 5/5/10), 37 So.3d 492, 498, *writs denied*, 10-1243, 10-1306 (La. 9/17/10), 45 So.3d 1057; see also *Fleniken v. Entergy Corp*., 00-1824 (La. App. 1 Cir. 2/16/01), 780 So.2d 1175, *writ denied*, 01-1268 (La. 6/15/01), 793 So.2d 1250, *writ denied*, 01-1305 (La. 6/15/01), 793 So.2d 1253, *writ denied*, 01-1317 (La. 6/15/01), 793 So.2d 1254.

In *Lushute v. Diesi*, 354 So.2d 179, 182 (La. 1977), the Louisiana Supreme Court held that in order for an independent contractor to be covered under the "manual labor exception," he must show that a substantial part of his work time in carrying out the terms of his contract with the principal is spent in manual labor and the work performed by him is part of the principal's trade, business, or occupation. Moreover, the jurisprudence has uniformly defined "manual labor" as work where the "physical" element predominates over the "mental" element. *Riles v. Truitt Jones Construction*, 94-1224 (La. 1/17/95), 648 So.2d 1296, 1300.

On appeal, and in her opposition to Raceway's summary judgment, Ms. Eager contends that the parties dispute whether or not Mr. Brightbill was an employee or independent contractor. She asserts that Mr. Brightbill was under the control of Kent Broussard, one of the owners of Raceway who was also a co-track manager along with Mr. Brightbill. Ms. Eager points out that Mr. Brightbill's duties were indistinguishable from payroll employees such as Barry Hebert. She alleges that Mr. Brightbill essentially performed everything required to further Raceway's operations of the racetrack. Ms. Eager argues that Mr. Brightbill was paid an hourly wage consistent with a skilled manual labor employee; there was no written contract between Performance and Raceway that outlined specific tasks that Mr. Brightbill was required to complete, and no duration of time was set for his job.

Conversely, Raceway avers that Mr. Brightbill was an independent contractor and that Ms. Eager is not entitled to workers' compensation benefits. In support of its summary judgment, Raceway submitted excerpts of the corporate deposition of Harry Petit to substantiate Mr. Brightbill's relationship to Raceway. Mr. Petit testified that Mr. Brightbill requested to be an independent contractor instead of an employee because he preferred to control the methods of his work and the time he spent working. Raceway further argues that Mr. Brightbill submitted invoices to be paid through his corporation and was simply paid an hourly rate for his services.

Upon review, the record before us does not show that the compensation court hearing officer undertook the above-described analysis or even considered whether or not Mr. Brightbill qualified as an employee or independent contractor under the Workers' Compensation Act. We find that the compensation court hearing officer erred as a matter of law in failing to determine whether the statutory presumption of employment was rebutted. Further, the compensation court hearing officer did not address the issues of whether Mr. Brightbill was an independent contractor performing manual labor, borrowed employee, or statutory employee or had any

other employment status that would entitle Ms. Eager to workers' compensation benefits, if any. The compensation court hearing officer erred in failing to address and resolve these issues before applying the La. R.S. 23:1032 exclusivity provision to the tort case settlement to grant summary judgment and dismiss Ms. Eager's claim.

***Course and Scope Requirement***

The compensation court hearing officer was also required to determine whether Mr. Brightbill was acting in the course and scope of his employment when the burn incident occurred. The course and scope requirement is a dual inquiry.

Under the Louisiana Workers' Compensation Act, an employer is responsible for compensation benefits to an employee only when the injury results from an accident "arising out of and in the course of his employment." La. R.S. 23:1031(A); *McLin v. Industrial Specialty Contractors, Inc.*, 02-1539 (La. 7/2/03), 851 So.2d 1135, 1139. The determination of whether an injury occurred in the course and scope of employment is a mixed question of law and fact. *Dean v. Southmark Construction*, 03-1051 (La. 7/6/04), 879 So.2d 112, 117.

The terms "arising out of" and "in the course of" are not synonymous, but cannot be considered in isolation from each other. *Jackson v. American Ins. Co.*, 404 So.2d 218, 220 (La. 1981). The Louisiana Supreme Court has explained that the term "arising out of" looks into the character or origin of the risk, while the term "in the course of" generally refers to the time and place of the accident as it relates to that of the regular employment, or employment activity. *Id.* An accident "arises out of employment" if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment, or if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred. *Mundy v. Dept. of Health &*

*Human Resources*, 593 So.2d 346, 349 (La. 1992). In a close case, a strong showing in one aspect can counterbalance a relatively weak showing in the other. *Id.*

Moreover, an accident has also been held to arise out of employment if the employee was engaged in his employer's business and not merely pursuing his own business or pleasure, and when the conditions or obligations of the employment cause the employee in the course of employment to be at the place of the accident at the time the accident occurred. *Guillory v. Interstate Gas Station*, 94-1767 (La. 3/30/95), 653 So.2d 1152, 1155. The principal objective of the "arising out of employment" requirement is to separate accidents attributable to employment risks, which form the basis of the employer's obligation under the compensation system, from accidents attributable to personal risks, for which the employer should normally not be responsible. *Id. See* 1 Arthur Larson, Workmen's Compensation, § 7.00 (1994).

An injury occurs in the course of employment when it is sustained by an employee actively engaged in the performance of his duties during work hours, either on the employer's premises or at other places where employment activities take him. *Mundy*, *supra*. For a mission to qualify as a special mission and thus be considered as employment-related rather than personal, an employee is deemed to be in the course of employment when he is engaged in the direct performance of duties assigned (i.e., requested, directed, instructed or required) by his employer. *Id.*

On appeal, and in her opposition to summary judgment, Ms. Eager avers that Mr. Brightbill's death occurred because of Raceway's persistent illegal activity in accumulating waste tires and its refusal to pay the costs associated with properly and legally disposing of the tires. She further argues that Mr. Brightbill gained nothing personally by burning the tires, and that he was performing this task for the sole benefit of Raceway. Since the fire accident occurred on Raceway's premises and

after the Halloween Bike Fest had been canceled, Ms. Eager maintains that Mr. Brightbill was working in the course and scope of his employment with Raceway.

On the other hand, Raceway contends that Mr. Brightbill was on its premises when the fire occurred, not because he was performing a task, duty, or activity in connection with Raceway, but rather for his annual bike fest, an event for which Performance leased the premises. Raceway argues that the operation of the racetrack was under the sole direction of Mr. Brightbill for his personal event that was separate and apart from the operations of the premises by Raceway. It avers that Mr. Brightbill was acting outside of the course and scope of any alleged duties he would perform for Raceway at the time he was injured. Raceway also maintains that Mr. Brightbill, as an independent contractor, was not within the course and scope of his Raceway assigned tasks at the time he engaged in the act of burning tires. Finally, Raceway also contends that in burning the tires, Mr. Brightbill was operating in violation of Mr. Petit's direct orders to desist from burning tires.

Upon *de novo* review, the record is devoid of evidence that the compensation court hearing officer undertook the analysis outlined under La. R.S. 23:1031(A), discussed above. We find that, without first resolving the issues as to Mr. Brightbill's employment status, whether he was or was not acting in the course and scope of his Raceway duties, and was or was not acting contrarily to a direct order at the time he was injured, the compensation court erred in prematurely applying the La. R.S. 23:1031(A) exclusivity provision.

**CONCLUSION**

We are "convinced that the interest of justice would be best served by remanding this case" to the compensation court for resolution of the outstanding preliminary issues discussed herein and for further action consistent with the compensation court's resolution of those issues. *Wegener v. Lafayette Ins. Co.*, 10-0810, (La. 3/15/11), 60 So.3d 1220, 1234.

**DECREE**

For the reasons set forth above, we vacate the Office of Workers' Compensation June 3, 2021 judgment granting summary judgment in favor of Circuit Grand Bayou, L.L.C. d/b/a No Problem Raceway and against Carly Eager, mother of decedent, Stephen Michael Brightbill, which dismissed her compensation claims. We further remand this matter for resolution of the preliminary issues discussed above and for further action consistent with the compensation court's findings as to those issues.

**VACATED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 11, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-578

### E-NOTIFIED

OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
DAVID A. BOWLING (APPELLANT)          JERALD N. ANDRY, III (APPELLANT)          CONNOR JACOB REINOSO (APPELLEE)

### MAILED

JEFFERY JOSEPH WALTZ (APPELLEE)
JILL A. WALTZ (APPELLEE)
ATTORNEYS AT LAW
1100 POYDRAS STREET
SUITE 2620
NEW ORLEANS, LA 70163